**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROLINE REICHE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 22 CV 427 RHH |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Caroline Reiche for Supplemental Security Income (SSI) under Title XVI of the Act.  The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on June 2, 1975 and was 39 years old on her alleged onset date. (Tr. 222.)  She protectively filed her application for SSI on December 12, 2018, alleging a disability onset date of October 1, 2014.  (Tr. 222-27.)  She alleged disability due to back pain and depression.  (Tr. 93.)  Her claims were denied, and she requested a hearing before an administrative law judge (ALJ).  (Tr. 98-101.)

On May 5, 2021, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act.  (Tr. 12-21.)  The Appeals Council denied review.  (Tr. 1-5.) Accordingly, the ALJ's decision became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## II.  ADMINISTRATIVE RECORD

The Court adopts Plaintiff's Statement of Uncontroverted Material Facts (Doc. 22-1), along with Defendant's Response to Plaintiff's Statement of Uncontroverted Facts (Doc. 23-1). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court will discuss specific facts in detail where relevant to this appeal.

## III.  DECISION OF THE ALJ

On May 5, 2021, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 12-21.)  At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 12, 2018, through the date of the decision.  At Step Two, the ALJ found plaintiff had the following severe impairments: lumbar degenerative disc disease, morbid obesity, major depressive disorder, and generalized anxiety disorder.  (Tr. 14.) At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1.  (Tr. 15-16.)

The ALJ determined that plaintiff had the RFC to perform "light" work as defined under the regulations with the following limitations:

The claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel crouch and crawl. The claimant should avoid hazards, such as unprotected heights and moving mechanical parts. The claimant is able to perform simple, routine tasks with minimal changes in job duties and setting. The claimant should avoid fast-paced type production work.

(Tr. 16.) The ALJ found that plaintiff had no past relevant work. Relying on vocational expert (VE) testimony, the ALJ concluded there were jobs plaintiff could perform such as housekeeping cleaner, mailroom clerk, and cafeteria attendant. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. (Tr. 20-21.)

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's denial of an application for disability insurance benefits, the Court determines whether the decision complies with the relevant legal requirements and is supported by substantial evidence in the record. *See* 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The review considers not only the record for the existence of substantial evidence in support of the Commissioner's decision. It also takes into account whatever in the record fairly detracts from that decision. *Cox v. Apfel,* 160 F.3d 1203, 1207 (8th Cir. 1998). We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because the

Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pates-Fires,* 564 F.3d at 942.

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to do so. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

- 4 -

# V. DISCUSSION

Plaintiff argues that the ALJ erred in evaluating four medical opinions: Martin Isenberg, Ph.D., Denise Trowbridge, M.D., Jessica Coulter, Psy.D., and treating psychiatrist Kit Gesmundo, M.D.  She further argues the ALJ erred in evaluating her subjective complaints of pain and other symptoms and in formulating her RFC.  The Court disagrees.

## 1. Opinion Evidence

Plaintiff applied for benefits after March 27, 2017, and therefore the ALJ applied the new set of regulations for evaluating medical evidence.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).  The revised regulations redefine how evidence is categorized, including "medical opinion" and "other medical evidence," and how an ALJ will consider these categories of evidence in making the RFC determination.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The new rules provide that adjudicators evaluate all medical opinions and findings using the factors delineated in the new regulations.  Supportability and consistency are the most important factors, and their application must be explained.  Other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's "treatment relationship" with the claimant, including the length, frequency, purpose and extent of the treating relationship, and whether the source has an examining (as opposed to non-examining) relationship with the claimant; specialization;

- 5 -

and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the Administration's disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(b), (c) (2017).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis. 20 C.F.R. § 404.1513(a)(3).

**Martin Isenberg, Ph.D.**

On April 12, 2019, state agency psychological expert Martin Isenberg, Ph.D., rendered an opinion in a prior administrative medical finding (PAMF), concluding Plaintiff suffered with "mild" limitations in understanding, remembering, and applying information; in interacting with others; and in concentrating, persisting and maintaining pace and "moderate" limitation in adapting or managing herself. (Tr. 82.) As a result of those limitations, he opined plaintiff "would do best in a work setting with predictable and gradual changes." (Tr. 88.)

In the decision, the ALJ concluded that Isenberg's opinion was "somewhat persuasive" because his opinion was inconsistent with the claimant's reporting and

treatment records, which supported moderate limitations in understanding, remembering, and applying information and in concentrating, persisting, and maintaining pace. (Tr. 19.)

Plaintiff contends the ALJ failed to satisfy 20 CFR §404.1520(c), which requires the ALJ to explain how the supportability and consistency factors for a medical source's opinion were considered. Plaintiff argues that other than making the general statement that the opinion is "inconsistent" with plaintiff's reports and treatment records, the decision fails to reference to any specific evidence or statements of hers that support the conclusion. She argues the ALJ forms other conclusions, i.e., moderate limitations, without reference to what evidence supports moderate limitations in understanding, remembering, and applying information and with concentrating, persisting, and maintaining pace.

This Court concludes the ALJ properly considered Dr. Isenberg's opinion according to the regulations, including the two most important factors, supportability and consistency. With respect to Plaintiff's argument that the ALJ only made a "general statement" regarding inconsistency and failed to reference what evidence supports moderate, rather than mild limitations, plaintiff's argument is unclear because the ALJ found that Plaintiff was *more* limited than Dr. Isenberg assessed. Moreover, the ALJ's Step Three discussion contains a detailed explanation for the moderate limitations she assessed. *See Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010) (ALJ's narrative explanation elsewhere in decision may illuminate other findings).

For example, in finding Plaintiff moderately limited in understanding, remembering, or applying information, the ALJ considered Plaintiff's reports that she did

not need reminders and could drive a car, prepare basic meals, and perform basic math, but had trouble with multiple instructions and mental fog. (Tr. 15, 272-273, 275, 277.) The ALJ also noted her treatment notes indicated Plaintiff's thought process was circumstantial and her insight was limited, but her memory was normal, and she was fully oriented. (Tr. 15, 582, 585-587, 590-592, 595-597, 600-602, 605-607, 613, 616-618, 622-624.) Such record evidence supports the ALJ's determination that Plaintiff was moderately, rather than merely mildly, limited in understanding, remembering, or applying information. (Tr. 15.) In addition, in finding Plaintiff moderately, rather than mildly, limited in concentration, persistence, or pace, the ALJ noted that Plaintiff was able to prepare basic meals and perform basic math, but needed encouragement doing household chores, had trouble with spoken instructions, and did not know how long she could concentrate, or it was very hard for her to concentrate.  (Tr. 16, 272-273, 275, 277.)   The ALJ also noted that treatment notes showed Plaintiff was anxious but had normal concentration.  (Tr. 16, 582, 584-585, 590, 595, 600, 605, 610-611, 616, 622.) This evidence supports the ALJ's determination that Plaintiff was moderately, rather just mildly, limited in concentration, persistence, or pace. (Tr. 15.)

This Court concludes the ALJ's Step Three discussion provides ample support for his determination that some of the mild limitations Dr. Isenberg assessed were inconsistent with the record evidence, ultimately finding Plaintiff had greater limitations than Dr. Isenberg assessed.  Accordingly, this Court finds no error.

**Jessica Coulter, Psy.D.**

On April 4, 2019, consultative psychologist Jessica Coulter, Psy.D., opined that plaintiff has no impairment in understanding, remembering or applying information; no impairment in interacting with others; no impairment in concentrating, persisting or maintaining pace; and moderate impairment in adapting and managing herself as she was unable to regulate her emotions on a consistent basis and lacked coping skills. (Tr. 85.)

In the decision, the ALJ concluded that Dr. Coulter's opinion was "unpersuasive" because it was "inconsistent with the claimant's reporting and treatment records, which supported the mental impairments reflected in the above 'B criteria.'" (Tr. 19 .) Plaintiff reiterates her argument that the ALJ failed to consider the supportability and consistency factors, because the ALJ provides no specific citation to reports of plaintiff or specific treatment records that are inconsistent with Dr. Coulter's opinion.

This Court disagrees.  In finding Dr. Coulter's opinion inconsistent with the record, the ALJ referred to her "Paragraph B" mental impairment discussion at Step Three.  (Tr. 19). *See Brandy R. v. Kijakazi,* No. 21-CV-0078 (JFD), 2022 WL 3020505, at *7 (D. Minn. July 29, 2022) (in evaluating opinion evidence, ALJ referred to evidence summarized earlier in the decision).

Whereas Dr. Coulter found Plaintiff had no impairment in understanding, remembering, or applying information and concentration, persistence, and pace, as discussed above, the ALJ provided a detailed explanation for why she found Plaintiff had moderate limitations in these areas.  (Tr. 15-16, 484.) While Dr. Coulter opined Plaintiff

had no impairment in interacting with others, the ALJ found a mild limitation. (Tr. 15, 484). In support of this finding, the ALJ noted that although Plaintiff had never been fired from a job for not getting along with others and was able to drive, go out alone, and shop in stores, she reported that she did not spend time with others aside from her daughter. (Tr. 15, 273-275.) The ALJ also considered that treatment notes generally showed an anxious affect, but Plaintiff was otherwise cooperative and displayed generally normal behavior. (Tr. 16, 582, 584, 589-590, 594, 599, 610.) The record evidence therefore supports the ALJ's finding that Plaintiff had mild limitations in interacting with others and was inconsistent with Dr. Coulter's opinion that Plaintiff had no impairment in this area.

### Denise Trowbridge, M.D.

Plaintiff next contends the ALJ erred in failing to evaluate the PAMF of state agency medical consultant Denise Trowbridge, M.D., which she argues is only opinion regarding her physical impairments and how they affect her ability to perform work functions.

Dr. Trowbridge opined that plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand 4/8 hours, and sit 6/8 hours; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; and avoid concentrated exposure to vibration, all pulmonary irritants, and all hazards. (Tr. 85-87.)

The ALJ did not discuss Dr. Trowbridge's PAMF in her decision, however, Plaintiff cannot show harm. *See Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009) (plaintiff bears burden of establishing harm). Dr. Trowbridge's PAMF is consistent with the ALJ's RFC

- 10 -

finding, except that Dr. Trowbridge opined Plaintiff could stand and/or walk for only 4 hours; could never crawl or climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to vibration and fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 85-87.) These limitations are inconsistent with the record evidence, which, as discussed below, supports the ALJ's determination that Plaintiff could perform the standing/walking required of light work, and could occasionally crawl and climb ladders, ropes, or scaffolds. (Tr. 16.)

Moreover, while Plaintiff contends that Dr. Trowbridge's PAMF is the only opinion regarding her physical impairments, it is well-established that while "some medical evidence" must support the ALJ's decision, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Instead, an ALJ may rely upon the medical records themselves. *Id.*

Here, in formulating Plaintiff's RFC, the ALJ considered consultative examiner Nirmala Mathew, M.D.'s April 2019 findings that Plaintiff had some reduced range of motion (ROM) in the lower back, but no tenderness, normal gait, full strength in all extremities, negative straight leg raises, and no neurological deficits. The ALJ also noted that a lumbar spine x-ray showed small spurs at several levels but was otherwise normal. (Tr. 18, 489-92.)  Further, in finding that Plaintiff's alleged limitations were not fully supported by the record, the ALJ noted that Plaintiff had relatively little workup for her back during the relevant period.  (Tr. 19).  The ALJ also noted that other records showed normal gait. (Tr. 19, 484, 582, 584, 589, 594, 599, 604, 610, 651).  In addition, the ALJ

cited examinations indicating that Plaintiff had back tenderness, but normal back curvature and full ROM in all extremities. (Tr. 18, 502-503, 504, 506, 508, 510.) This evidence is inconsistent with Dr. Trowbridge's PAMF and supports the ALJ's RFC for light work with some postural limitations. (Tr. 16.)

Finally, while Dr. Trowbridge opined that Plaintiff must avoid concentrated exposure to vibrations and fumes, odors, dusts, gases, poor ventilation, etc. due to mild asthma by history only and controlled hypertension, the record evidence does not support any such limitations. (Tr. 87.) The ALJ found Plaintiff's hypertension non-severe at Step Two because it was well controlled with medication. (Tr. 14.) Nor did Dr. Trowbridge explain how Plaintiff's hypertension resulted in environmental limitations. Regarding any history of asthma, the ALJ noted that despite reporting shortness of breath prior to applying for SSI, studies did not show any identifiable cause for Plaintiff's symptoms. (Tr. 18, 357-358.) The ALJ also noted that Plaintiff did not report problems with shortness of breath, except related to acute illness after her alleged onset date. (Tr. 18, 502, 504, 506, 508, 510.) Accordingly, the record evidence does not support Dr. Trowbridge's opinion suggesting a need for environmental limitations.

Even assuming arguendo that the ALJ should have adopted Dr. Trowbridge's environmental limitations, Plaintiff cannot show harm. At Step Five, the ALJ found Plaintiff could perform work as a housekeeping cleaner, mail room clerk, and cafeteria attendant (Tr. 20.) According to the Dictionary of Occupational Titles (DOT), vibration

and atmospheric conditions[1] are "Not Present-Activity or condition does not exist" in these occupations. *See* DOT 323.687-014, 1991 WL 672783 (cleaner, housekeeping); 209.687-026, 1991 WL 671813 (mail clerk); 311.677-010, 1991 WL 672694 (cafeteria attendant). Thus, Plaintiff cannot show harm. *See Shinseki*, 556 U.S. at 409-410 (plaintiff bears burden of establishing harm).

This Court concludes any error in not considering Dr. Trowbridge's PAMF was harmless. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show an error was not harmless, claimant must provide some indication that the ALJ would have decided differently if the error had not occurred). The ALJ discussed the record evidence that negated the physical and environmental limitations that Dr. Trowbridge assessed and identified jobs that were consistent with Dr. Trowbridge's environmental limitations.

**Kit Gesmundo, M.D.**

Plaintiff was treated for anxiety and depression by Kit Gesmundo, M.D. a psychiatrist, from July 12, 2019, through the date of the ALJ's decision. In a Mental Medical Source Statement (MSS) dated April 9, 2021, Dr. Gesmundo opined that Plaintiff had marked limitations in concentration, persistence, and pace; below average pace of production; she was able to carry out simple tasks; she had moderate impairment in responding appropriately; she could not perform in proximity to co-workers without being

---

[1]  Appendix D of the Selected Characteristics of Occupations ("SCO"), the DOT's companion publication, defines "atmospheric conditions" as "exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes, or the skin." *See* SCO, Appendix D.

a distraction; she had no significant limitations in interacting with supervisors or the general public; and she would be absent or late from work three or more times per month. (Tr. 859-861.)

The ALJ found Dr. Gesmundo's opinion "somewhat internally inconsistent," on the basis that Dr. Gesmundo indicated marked impairment in Plaintiff's social interactions but no impairment in her ability to interact with others. (Tr. 19, 860-861). Dr. Gesmundo indicated Plaintiff had marked limitations in her ability to keep social interactions free of excessive irritability, argumentativeness, sensitivity, or suspiciousness, but also indicated that Plaintiff had no limitation in her ability to maintain socially acceptable behavior. He also believed Plaintiff could not work in proximity to co-workers but had no significant limitations interacting with supervisors and the general public. (Tr. 860-861.)

Plaintiff argues that Dr. Gesmundo's opinion is not internally inconsistent because it refers to Plaintiff's ability to function generally as opposed to in a workplace setting. Further, when asked to rate Plaintiff's ability to sustain performance for full-time work, Dr. Gesmundo opined that Plaintiff could not work in proximity to co-workers, but had no significant limitations interacting normally with supervisors and the public. Dr. Gesmundo did not explain this discrepancy in his opinion.  (Tr. 860-861.) Accordingly, the ALJ did not err in finding Dr. Gesmundo's opinion internally inconsistent.

The ALJ also found Dr. Gesmundo's opinion inconsistent with his own treatment notes, which did not support the level of impairment, absences, and frequency of the psychiatric limitations he reported.  (Tr. 19).  *See e.g., Dotson v. Saul*, No. 4:20 CV 310

- 14 -

RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021) (physician's own notes are relevant to the supportability of a medical opinion).  Contrary to Plaintiff's assertion, the ALJ's detailed discussion of Dr. Gesmundo's psychiatric records in other portions of the decision provide good support for this conclusion.  *See Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010)(ALJ's narrative explanation elsewhere in decision may illuminate other findings).  For example, earlier in his decision, the ALJ discussed Dr. Gesmundo's treatment notes, which showed a few abnormalities, but otherwise normal mental status findings with either stable observations or improvement.  (Tr. 18, 582, 584-587, 589-592, 593-597, 598-602, 603-607, 610-613, 614-618, 620-624.) Dr. Gesmundo consistently found that Plaintiff was cooperative; her attention and concentration were sustained; her speech and psychomotor activity were normal; she was alert and fully oriented; her recent and remote memory were normal; and her insight and judgment were fair. (Tr. 584-587, 589-592, 594-597, 599-602, 604-607, 610-613, 616-618, 622-624.) Plaintiff told Dr. Gesmundo that her medications were working, and she reported that her symptoms were stable or improved. (Tr. 593, 597, 602-603, 614, 618, 620.)  The ALJ also noted Plaintiff told Dr. Gesmundo that she had no side effects from her medications or other complaints. (Tr. 18, 593, 598.) The ALJ also referenced Plaintiff's August 2019 statement to Dr. Gesmundo that she was going camping the following weekend with her daughter. (Tr. 18, 589.) Based on the above, this Court concludes the ALJ sufficiently explained why he found Dr. Gesmundo's opinion inconsistent with his own treatment notes. *See Pemberton*

*v. Saul*, 953 F.3d 514, 517 (8th Cir. 2020) (ALJ can give less weight to internally inconsistent opinions).

### 2. Subjective Complaints of Pain

Plaintiff next argues the ALJ erred in evaluating her subjective complaints of pain and other symptoms in discounting her credibility.  She notes that she has both physical pain and mental health limitations, and because pain and mental health symptoms cannot always be objectively quantified, it is necessary for the ALJ to conduct a proper credibility evaluation of plaintiff's statements.  She contends the ALJ erred in concluding that her allegations are not fully supported by the record.  She argues the ALJ's credibility evaluation fails to consider most of the Polaski factors and instead only mentions general "normal" and "full" findings and makes general conclusions without identifying any specific inconsistencies.  The Court disagrees.

Part of the RFC determination includes an assessment of the claimant's credibility regarding subjective complaints.  Using the Polaski factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting Polaski factors must be considered before discounting subjective complaints). In addition to the claimant's prior work record, the Polaski factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of

- 16 -

medication; and (5) functional restrictions.  *Polaski*, 739 F.2d at 1322 ; see also 20 C.F.R.
§ 404.1529.

Here, the ALJ considered the Polaski factors.  The adjudicator is "not required to
discuss each Polaski factor as long as '[she] acknowledges and considers the factors before
discounting a claimant's subjective complaints.'"  *Halverson v. Astrue*, 600 F.3d 922, 932
(8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). As an initial
matter the Court notes Plaintiff cites no support for her contention that an ALJ may not
compare a claimant's normal/full examination findings with her subjective complaints of
disability, nor is the Court aware of any.  To the contrary, an ALJ may rely on objective
evidence as a "useful indicator" in evaluating subjective complaints.  *See* 20 C.F.R.
§ 416.929(c)(2).  In addition, in this Circuit findings of normal strength and range of
motion and full extension can undermine a claimant's disability allegations.  *See Schwandt
v. Berryhill,* 926 F.3d 1004, 1012 (8th Cir. 2019).

Here, the ALJ considered Plaintiff's subjective complaints, including her testimony
that she could sit for only 30 minutes at a time and could not walk more than 10 minutes.
He then found her statements not entirely consistent with the medical and other evidence.
(Tr. 17.) The ALJ noted that Plaintiff's imaging and examinations were inconsistent with
her testimony regarding symptoms and limitations. (Tr. 19.) The ALJ cited specific medical
findings, including normal gait; full strength in all extremities; negative straight leg raises;
and no neurological deficits. (Tr. 18-19.)  As discussed above, the ALJ also noted that x-
ray imaging of Plaintiff's low back showed small spurs at several levels but was otherwise

- 17 -

normal. (Tr. 18.) The ALJ found that Plaintiff's treatment for her back, which included "relatively little workup" during the relevant period, undermined her subjective complaints. (Tr. 19.)

As to Plaintiff's mental limitations, the ALJ considered Plaintiff's claim that she could not work due to depression but noted that while she received regular treatment from her psychiatrist, she was never hospitalized for mental health issues. (Tr. 17-19.) *Cf. Ramic v. Colvin,* No. 4:13CV2442 AGF-TIA, 2015 WL 430194 AT *11 (E.D. Mo. Feb. 2, 2015) (ALJ noted that claimant had never been hospitalized for mental problems, nor had she experienced any discrete periods of worsening mental health).  The ALJ also considered that Plaintiff's psychiatric records consistently noted she was stable or showed improvement with medication. (Tr. 18-19.) *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled with  treatment, it cannot be considered disabling).  The ALJ also noted Plaintiff reported no side effects from her medications and that while examinations supported some degree of impairment, it was not to the degree that Plaintiff testified to at her hearing. (Tr. 18-19.)

Based on the above, this Court concludes the ALJ properly considered valid factors in evaluating Plaintiff's subjective complaints.

### 3.  Residual Functional Capacity (RFC)

Plaintiff finally argues the ALJ's RFC is conclusory because he failed to reference or explain what evidence supports his conclusions.  She argues the ALJ improperly drew inferences from the medical reports, and relied on the opinions of non-treating, non-

examining medical consultants, who relied on the records of the treating sources to form an opinion of her RFC.  She contends the decision lacks any explanation of what evidence supports the limitations included in the ALJ's RFC.  She notes there is no discussion of her anxiety or panic attacks and how those symptoms were accommodated for in the RFC. She notes that it is unclear how a limitation to simple, routine tasks with minimal changes in duties or setting, and/or avoiding fast-paced production type jobs accommodates her symptoms, nothing that a panic attack will result in time off-task when she is not able to work, regardless of the skill level or pace of the job.

She also contends the physical portion of the RFC is a "mystery" as there is no discussion explaining how or what evidence supports her ability to lift and carry 20 pounds occasionally and 10 pounds frequently, stand for 6/8 hours, or occasionally stoop, kneel, crouch and crawl. She argues in short that it is unclear how plaintiff's severe lumbar degenerative disc disease and obesity are accounted for in the ALJ's RFC.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record.  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  The claimant has the burden to

- 19 -

establish RFC.  *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).  The RFC need only include the limitations supported by the record.  *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

The ALJ determined that plaintiff had the RFC to perform "light" work as defined under the regulations with the following limitations. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel crouch and crawl. She should avoid hazards, such as unprotected heights and moving mechanical parts. She is able to perform simple, routine tasks with minimal changes in job duties and setting.  She should avoid fast-paced type production work. (Tr.16.)

With respect to physical impairments, the ALJ considered that Plaintiff had normal gait; full strength in all extremities; negative straight leg raises; no neurological deficits; and an x-ray of her back showed small spurs at several levels but was otherwise normal. (Tr. 18-19.)  The ALJ also considered that Plaintiff underwent relatively little treatment for her back pain. (Tr. 19.) The ALJ also observed that Plaintiff was able to increase cleaning around her house during the relevant period, "removing"[2] two dumpsters worth of trash at one point. (Tr. 18, 609, 731.) *See Hensley*, 829 F.3d at 931 (RFC is based on all relevant evidence, including claimant's own description of her limitations).  This evidence is consistent with the ALJ's finding that Plaintiff could perform light work with postural limitations. (Tr. 16.)

---

[2] The record states Plaintiff "filled up" two dumpsters of trash, not "removed" two dumpsters of trash as the ALJ indicated.  (Tr. 731.)

With respect to mental impairments, the ALJ considered that Plaintiff was never hospitalized for mental issues, as well as her fairly normal mental status findings, which the ALJ discussed in detail.  (Tr. 18-19.) In addition, the ALJ considered that mental health records described Plaintiff as either stable or improved and that she denied any side effects from her medication. (Tr. 18-19.) The ALJ noted she was able to go camping and was involved with her daughter. (Tr. 18, 589.)

An ALJ is not required to list each limitation of the RFC followed by the specific evidence that supports it.  *See Cichocki v. Astrue*, 729 F.3d 172 (2d Cir. 2013) (ALJ's failure to engage in explicit function-by-function RFC analysis does not require remand where the ALJ's analysis provides a basis for meaningful review, applies the correct legal standards, and is supported by substantial evidence). Thus, the rationale for the ALJ's RFC is clear and satisfies the factors outlined in SSR 96-8p.  Nor has Plaintiff met her burden of proving additional limitations.  *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (claimant's burden to establish her RFC).

The ALJ relied on evidence that a "reasonable mind" would accept as adequate to support the conclusion that Plaintiff could perform simple, routine tasks with minimal changes in job duties and no fast-paced production type work. *See Pates Fire v. Astrue*, 564 F.3d 942. Therefore, the ALJ committed no error.

# VI.  CONCLUSION

For the reasons set forth above, the Court concludes substantial evidence supports the ALJ's decision as a whole.  The decision is affirmed.  A separate Judgment Order is issued herewith.

Dated this 26th day of May, 2023.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE